## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ANTONIO ALVARADO LUNA,** | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WARDEN,** *in their official capacity* as Warden of the ERO Camp East Montana Detention Facility; **MARY DE ANDA-YBARRA,** *in her official capacity* as Field Office Director of the ICE El Paso Field Office of Enforcement and Removal Operations, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; **TODD M. LYONS,** *in his official capacity* as Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; **KRISTI NOEM,** *in her official capacity* as Secretary, U.S. Department of Homeland Security; and **PAMELA JO BONDI,** *in her official capacity* as Attorney General of the United States, | § § § § § § § § § § § § § § § | **EP-25-CV-00565-DCG** |
| *Respondents.* | § | |

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

For the following reasons, the Court **GRANTS** Petitioner Antonio Alvarado Luna's

Petition for Writ of Habeas Corpus (ECF No. 1):

## I.    INTRODUCTION

In recent months, federal courts across the country have seen an influx of petitions for

habeas corpus by noncitizens who are detained in the United States pending removal

proceedings.  Among the catalysts?  The federal government's revisited interpretation of

detention and release authorities under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*[1]

The issue presented here and in numerous other cases[2] is whether the INA mandates detention for noncitizens that are subject to removal proceedings but already in the United States.[3]  Before answering that question, let's start with an overview of the INA's relevant detention authorities.

The first such authority is Section[4] 1225(b)(1), which applies to noncitizens who (1) are present at the border or have resided in the United States for less than two years without being admitted or paroled; ***and*** (2) the INA deems inadmissible for either misrepresenting a material fact while attempting to gain admission to the country or lacking proper immigration documentation.[5]  For this category of noncitizens, Section 1225(b)(1) prescribes expedited removal proceedings, during which noncitizens are not typically released.[6]

---

[1] *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025); *see also* Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, Washington Post (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/.

[2] *See, e.g.*, *infra* note 20.

[3] What it means to be "in the United States" for immigration purposes is a thorny topic.  But, for the purposes of this Order, the Court uses that phrase to refer to noncitizens who (1) are located in the interior of the country, past the border or ports of entry; and (2) aren't subject to expedited removal proceedings under 8 U.S.C. § 1225(b)(1).  *See Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6–12 (S.D.N.Y. Dec. 17, 2025) (discussing scope of Section 1225(b)(1)).

[4] Unless otherwise stated, the Court's references to "Sections" refer to sections of the INA.

[5] *See* 8 U.S.C. §§ 1225(b)(1)(A)(i); 1182(a)(6)(C) (inadmissibility based on misrepresentation); 1182(a)(7) (inadmissibility for lack of documentation).

[6] *See Mejia Diaz v. Noem*, No. 3:25-CV-960-CCB-SJF, 2025 WL 3640419, at *4 n. 3 (N.D. Ind. Dec. 16, 2025).

The second authority is Section 1225(b)(2), which applies to "applicants for admission" who are "seeking admission" to the country.[7]  The INA defines "applicants for admission" as noncitizens who are present in the United States without being admitted or who arrive in the United States.[8]  Like Section 1225(b)(1), Section 1225(b)(2) generally doesn't allow noncitizens to be released while their removal proceedings are pending—with limited exceptions[9], detention is mandatory.[10]

The third authority is Section 1226(a).  Unlike the first two authorities, Section 1226(a) prescribes a discretionary detention framework for noncitizens that are subject to removal proceedings.[11]  Under Section 1226(a) and corresponding regulations, noncitizens are generally entitled to a bond hearing.[12]

The fourth and final authority is Section 1226(c).  That subsection specifies certain criminal histories that mandate detention of noncitizens who would otherwise be eligible for a bond hearing under Section 1226(a).[13]

---

[7] *See* 8 U.S.C. § 1225(b)(2).

[8] *See* 8 U.S.C. § 1225(a)(1).

[9] *See* 8 U.S.C. §§ 1182(d)(5); 1225(b)(2)(C).

[10] *See* 8 U.S.C. § 1225(b).

[11] *See* 8 U.S.C. § 1226(a); *see also dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *1 (D. Mass. Aug. 14, 2025) ("Section 1226(a) establishes a discretionary detention framework for noncitizens who are 'arrested and detained' '[o]n a warrant issued by the Attorney General.'").

[12] *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

[13] *See id.* at 289 ("Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)."); 8 U.S.C. § 1226(c).

So, which detention authorities apply to noncitizens who are already in the United States? For decades, the government's answer was Sections 1226(a) and (c)—regardless of how the noncitizens entered the country.[14]  Under that interpretation, noncitizens without criminal histories could expect a bond hearing.[15]  Conversely, the government had interpreted Section 1225(b)(2)'s mandatory detention provisions as applying to noncitizens who are at the border or a port of entry.[16]

That changed in July 2025, when the Department of Homeland Security (DHS) revisited its position and determined that Section 1225(b)(2) also applies to noncitizens who are already in the United States.[17]  The government's shift was met by a flurry of legal challenges by noncitizens who would have been given bond hearings under the government's prior position but are now subject to mandatory detention.[18]  These noncitizens typically argue that: (1) Section 1225(b)(2) does not mandate detention of those already in the United States; and (2) even if

---

[14] *See, e.g.*, *Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA 2025) (determining that noncitizen who had entered the United States unlawfully three years earlier was subject to discretionary detention under Section 1226(a)); *see also supra* note 1.

[15] *See supra* note 12 and accompanying text.

[16] *See* 8 U.S.C. § 1225(b)(2); *see also Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *4 (D. Colo. Oct. 24, 2025).

[17] *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Dec. 29, 2025); *see also Acosta de Perez v. Frink*, No. CV H-25-5357, 2025 WL 3626347, at *2 (S.D. Tex. Dec. 12, 2025).

The Board of Immigration Appeals ultimately adopted the government's revisited position in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 223 (BIA 2025).

[18] *See supra* at 1–2 and note 1.

Section 1225(b) did apply, the government's refusal to provide a bond hearing violates the Fifth Amendment's due process clause.[19]

Most district courts have agreed that applying Section 1225(b)(2) to noncitizens who are already in the United States contravenes either the INA or due process.[20]  A minority of district courts, however, have concluded just the opposite—that Section 1225(b)(2) applies and comports with due process.[21]  Until the Fifth Circuit weighs in, the Court must make its own, independent assessment.[22]

It bears mentioning that the Court's role is not to weigh in on immigration policy.  That issue is "entrusted exclusively to the political branches of our Government," and the Court will not "substitute [its] political judgment for that of the Congress."[23]  What the Court **will** do is ensure that the government is operating within statutorily and constitutionally defined bounds.[24]

---

[19] *See, e.g.*, *Sandhu v. Tsoukaris*, No. CV 25-14607 (BRM), 2025 WL 3240810, at *2 (D.N.J. Nov. 20, 2025); *Giron Reyes v. Lyons*, No. C25-4048-LTS-MAR, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025).

[20] *See Khogiani v. Raycraft*, No. 25-CV-13744, 2025 WL 3684539, at *2 (E.D. Mich. Dec. 18, 2025) (citing over seventy decisions to demonstrate that the "overwhelming majority of [district] courts have concluded that § 1226(a) is the appropriate statutory framework" for detaining noncitizens who are already in the country).

[21] *See generally, e.g.*, *Cabanas v. Bondi*, No. 4:25-CV-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025) (denying petition on basis that Section 1225(b)(2)'s mandatory detention provision applied).

[22] *See Cabanas*, 2025 WL 3171331, at *5.

[23] *See Bright v. Parra,* 919 F.2d 31, 33 (5th Cir. 1990) (quoting *Fiallo v. Bell,* 430 U.S. 787, 798 (1977)).

[24] *See Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [the INA's jurisdiction-stripping statute] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions."); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (collecting cases).

In this instance, it's not.  As explained below, Section 1225(b)(2)'s mandatory detention framework doesn't apply to noncitizens who are already in the country.

## II.    BACKGROUND

Petitioner Antonio Alvarado Luna is one of the many noncitizen detainees whom the government now argues is subject to mandatory detention under Section 1225(b)(2).  He is a Mexican citizen who has resided in the United States since approximately 1999, when he entered the country without inspection.[25]  Per his counsel, the extent of Petitioner's criminal history is a driving under the influence offense and other traffic violations.[26]

In November 2025, Petitioner was detained by Immigrations and Customs Enforcement (ICE), and DHS initiated removal proceedings.[27]  Among the bases DHS cited for Petitioner's removal were his lack of United States citizenship, entry into the country without inspection, and lack of valid travel documentation.[28]  The Notice does not reference any criminal history.[29]

---

[25] *See* Pet., ECF No. 1, ¶¶ 1, 14; Pet'r's Reply, ECF No. 5, at 3.

[26] The Court held a show cause hearing on December 9, 2025.  At the hearing, Petitioner's counsel indicated that, although Petitioner had pled "upon information and belief" that he did not have a criminal history, *see* Pet. ¶ 47, further investigation revealed the contrary.

This fact isn't relevant to whether Section 1225(b)(2) applies to Petitioner.  It may, however, be relevant to which subsection of Section 1226 applies.  *See, e.g.*, 8 U.S.C. § 1226(c)(1)(E)(ii) (mandating detention for inadmissible noncitizens with a history of "any crime that results in death or serious bodily injury to another person").

[27] *See* Pet. ¶¶ 1, 14; Notice Appear, ECF No. 4-1.

[28] *See* Notice Appear at 1, 4.

[29] *See generally id.*

- 6 -

Petitioner is currently being held at the Camp East Montana Detention Facility in El Paso, Texas.[30]  He was not given a bond hearing,[31] and he is scheduled to appear before an immigration judge (IJ) on January 14, 2026.[32]

Petitioner filed this action on November 18, 2025.  He argues that because he was detained within the interior of the United States, he is entitled to a bond hearing under Section 1226(a) and corresponding regulations.[33]  Respondents' failure to provide a bond hearing, he argues, violates not only the INA but also due process.[34]  On these bases, Petitioner asks the Court to order Respondents to either him release from custody or conduct a bond hearing.[35]

Respondents don't specifically contest any of Petitioner's factual allegations.[36]  Rather, they argue that (1) the INA's jurisdiction stripping statutes prevent the Court from reaching Petitioner's arguments;[37] (2) Section 1225(b)(2) applies to Petitioner and prescribes mandatory detention;[38] and (3) applying Section 1225(b)(2) here comports with due process.[39]

---

[30] *See* Pet. ¶¶ 1, 14.

[31] *See generally id.*

[32] *See* Resp'ts' Resp., ECF No. 4, at 3.

[33] *See generally* Pet.

[34] *See id.* at 11–14.

[35] *See id.* at 14.

[36] *See generally* Resp'ts' Resp.  While Respondents state that "[a]ny allegations that are not specifically admitted . . . are denied," *id.* at 1, Respondents' arguments seem to accept all but Petitioner's allegations regarding his criminal history as true, *see generally id.*

[37] *See* Resp'ts' Resp. at 1, 10–11.

[38] *Id.* at 4–10; *see also* Resp'ts' Advisory, ECF No. 8 (citing cases finding that Section 1225(b)(2) applies to noncitizens that are already in the country).

[39] *See* Resp'ts' Resp. at 11–13.

## III.    LEGAL STANDARD

Under 28 U.S.C. § 2241, a detainee may challenge their confinement as unlawful by filing a habeas corpus petition.[40]  In a habeas proceeding, the detainee/petitioner bears the burden of showing that they are "in custody in violation of the Constitution or laws or treaties of the United States."[41]  "[B]ecause the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."[42]

## IV.    DISCUSSION

### A.    The Court has jurisdiction to hear Petitoner's claims

Preliminarily, Respondents argue that four INA provisions strip the Court of jurisdiction to hear Petitioner's claims.  As explained below, none do so.

### 1.    Section 1225(b)(4) doesn't strip the Court of jurisdiction

Respondents first argue that Section 1225(b)(4) requires Petitioner to challenge his detention "before an immigration judge in removal proceedings."[43]  That subsection provides:

> The decision of the examining immigration officer, if favorable to the admission of any alien,[44] shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under § 1229a of this title.[45]

---

[40] 28 U.S.C. § 2241(c).

[41] *Id.*

[42] *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[43] *See* Resp'ts' Resp. at 1, 10.

[44] The term "alien" is interchangeable with "noncitizen" for the purposes of the INA.  *See* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

[45] 8 U.S.C. § 1225(b)(4).

The Court is unclear how Respondents read Section 1225(b)(4)—which allows *immigration officers* to initiate IJ review of a decision "favorable to the admission" of Petitioner—to prevent **Petitioner** from challenging the lawfulness of his detention. Not only are these distinct concepts, but Respondents themselves argue that they never admitted Petitioner into the country.[46] Thus, there is no decision "favorable to the admission of" Petitioner to review, and Section 1225(b)(4) is completely inapposite.[47]

### 2.    Section 1226(e) doesn't strip the Court of jurisdiction

Respondents next claim that Section 1226(e) precludes the Court's review.[48] That subsection provides that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.[49]

This subsection is (of course) located in Section 1226, which is not the detention authority that Respondents argue applies to Petitioner. In other words, Respondents simultaneously argue that Section 1226 **doesn't** apply where it would entitle Petitioner to a bond hearing but **does** apply

---

[46] *See* Resp'ts' Resp. at 15 (arguing that Petitioner "has not been 'admitted to the United States after an inspection by an immigration officer'").

[47] *See, e.g., Aldana Perez v. Noem*, No. 5:25-CV-01534-XR, 2025 WL 3654262, at *3 (W.D. Tex. Dec. 5, 2025); *Murillo-Rodriguez v. Bondi*, No. 5:25-CV-1684-JKP, 2025 WL 3654335, at *3 (W.D. Tex. Dec. 12, 2025).

[48] *See* Resp'ts' Resp. at 1.

[49] 8 U.S.C. § 1226(e).

where it would limit Petitioner's ability to seek judicial review. The Court finds this argument completely untenable.

Regardless, where Section 1226(e) strips courts of jurisdiction to review discretionary decisions, "it does not deprive [courts] of all authority to review statutory and constitutional challenges."[50] Those are not discretionary issues.[51] In *Demore v. Kim*, the Supreme Court determined that Section 1226(e) didn't preclude a noncitizen from lodging a constitutional challenge to the framework that permits detention without bail under Section 1226(c).[52] The Supreme Court later expanded upon *Demore* and opined in a plurality opinion that Section 1226(e) doesn't preclude statutory challenges either.[53] The prevailing view is now that Section

---

[50] *See Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

[51] *See, e.g.*, *Martinez v. Clark*, 124 F. 4th 775, 779 (9th Cir. 2024); *Granados v. Noem*, No. 5:25-CV-01464-XR, 2025 WL 3296314, at *3 (W.D. Tex. Nov. 26, 2025).

[52] *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").

[53] *Jennings*, 583 U.S. at 295 ("[Section] 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'" (quoting *Demore v. Kim*, 538 U.S. at 517)); *see also Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (finding that Section 1226(e) did not preclude jurisdiction where claims disputed "the extent of the statutory authority that the Government claims" (plurality opinion)).

While a majority of the Justices in *Jennings* concluded that Section 1226(e) didn't preclude jurisdiction, *see* 583 U.S. at 326 (Thomas, J. concurring in judgment), no one view controlled. *See generally id.* Under the *Marks* rule, the plurality opinion—being narrower of the two opinions that found jurisdiction—controls. *See Rodriguez v. Olson*, No. 1:25-CV-12961, 2025 WL 3672856, at *3 (N.D. Ill. Dec. 17, 2025) (citing *Marks v. United States*, 430 U.S. 188 (1977)).

1226(e) doesn't preclude courts from hearing challenges to immigration officials' authority to impose mandatory detention.[54]

That's just what Petitioner seeks to do here.[55]  Section 1226(e) doesn't preclude the Court's review.

### 3. Section 1252(b)(9) doesn't strip the Court of jurisdiction

The next provision at issue is Section 1252(b)(9), which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [including Sections 1225 and 1226] shall be available only in judicial review of a final order under this section.[56]

According to Respondents, Petitioner's claims "arise from" his removal proceedings.[57]  Thus, absent a final order in such proceedings, Respondents argue that judicial review isn't available to Petitioner.[58]

---

[54] *See, e.g.*, *Ozturk v. Hyde*, 136 F.4th 382, 401 (2d Cir. 2025) ("[Section] 1226(e) does not foreclose jurisdiction over habeas petitions challenging detention pursuant to [Section] 1226(a)." (citation modified)); *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) ("Nothing in [Section] 1226(e) prevents us from deciding whether the immigration officials had statutory authority to impose mandatory detention." (citation modified)); *Al–Siddiqi v. Achim,* 531 F.3d 490, 494 (7th Cir. 2008) ("[Section] 1226(e)] does not deprive us of our authority to review statutory and constitutional challenges."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although [Section] 1226(e) restricts jurisdiction in the federal courts . . . , it does not limit habeas jurisdiction over constitutional claims or questions of law." (citation modified)).

[55] *See generally* Pet.

[56] *See* 8 U.S.C. § 1252(b)(9); *see also Jennings*, 583 U.S. at 292.

[57] *See* Resp'ts' Resp. at 10–11; *see also* 8 U.S.C. § 1252(b)(9) (contemplating claims "***arising from*** any action taken or proceeding brought to remove an alien from the United States" (emphasis added)).

[58] *See* Resp'ts' Resp. at 8, 10–11.

Section 1252(b), however, only applies "[w]ith respect to review of an order of removal."[59]  Its subsections do not "present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined."[60]  Nor does it "sweep within its scope claims with only a remote or attenuated connection to the removal of an alien . . . [or] preclude review of claims that cannot be raised efficaciously within the administrative proceedings already available."[61]

Indeed, the Supreme Court's plurality rejected Respondents' expansive reading of Section 1252(b)(9)'s "arising from" language in *Jennings v. Rodriguez*.[62]  As the plurality observed, Respondents' reading would "make claims of prolonged detention effectively unreviewable."[63]  That's because "[b]y the time a final order of removal [is] eventually entered, the allegedly excessive detention would have already taken place."[64]

The Court will not read Section 1252(b)(2) to "preclude review of claims that 'cannot be raised efficaciously within the administrative proceedings' already available."[65]  Petitioner is not

---

[59] *See* 8 U.S.C. § 1252(b).

[60] *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*., 591 U.S. 1, 19 (2020) (citation modified).

[61] *See Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (citation modified).

[62] *See Jennings*, 583 U.S. at 292–95.  *See also supra* note 53.

[63] *Jennings*, 583 U.S. at 293.

[64] *Id.*

[65] *See Duron*, 898 F.3d at 647 (quoting *Aguilar v. I.C.E.*, 510 F.3d 1, 9 (1st Cir. 2007)).

*See also Jennings*, 583 U.S. at 293–94 ("In past cases, when confronted with capacious phrases like 'arising from,' we have eschewed uncritical literalism leading to results that no sensible person could have intended." (citation modified)).

challenging his removal but rather his detention while he awaits a final order in his removal proceedings.[66]  Section 1252(b)(9) does not bar the Court's review.[67]

### 4. Section 1252(g) doesn't strip the Court of jurisdiction

Finally, Respondents argue that Section 1252(g) deprives the Court of jurisdiction.  That subsection prohibits federal district courts from considering "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA]."[68]

By its terms, Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"[69]  This language does not "sweep in any claim that can technically be said to 'arise from' the three listed actions."[70]  Rather, Section 1252(g) prohibits courts from second-guessing the Attorney General's discretion on "whether and when to prosecute or adjudicate removal proceedings or to execute removal orders."[71]

---

[66] *See generally* Pet.

[67] *See, e.g.*, *Ayobi v. Castro*, No. 5:19-CV-1311-OLG, 2020 WL 13411861, at *3 (W.D. Tex. Feb. 25, 2020); *Escalante v. Noem*, No. 25-CV-182, 2025 WL 2206113, at *2–3 (E.D. Tex. Aug. 2, 2025).

[68] *See* 8 U.S.C. § 1252(g).

[69] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

[70] *Jennings*, 583 U.S. at 294 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482–83).

[71] *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999).

Once again, Petitioner is not challenging any decision to prosecute, adjudicate, or execute his removal.[72]  Instead, he challenges his ongoing detention while his removal proceedings are pending.  Section 1252(g) doesn't strip the Court of jurisdiction to hear this matter.[73]

*****

In sum, the federal habeas corpus statute grants this Court authority to consider the lawfulness of Petitioner's detention under the INA and Constitution.[74]  None of the above jurisdiction stripping provisions suggest otherwise.

The Court will now turn to the merits.

---

[72] *See generally* Pet.; *see also Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) ("[S]ection 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g).").

[73] *See, e.g.*, *Santiago v. Noem*, No. 3:25-CV-361-KC, 2025 WL 2792588, at *4 (W.D. Tex. Oct. 2, 2025); *Lopez Santos v. Noem*, No. 25-CV-1193, 2025 WL 2642278, at *2–3 (W.D. La. Sept. 11, 2025).

[74] *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (granting courts authority to determine whether detention is "in violation of the . . . laws . . . of the United States" (citing 28 U.S.C. § 2241(c)(3))).

**B.      Section 1225(b)(2) doesn't apply to Petitioner**

The merits turn on whether Section 1225(b)(2)[75] applies to noncitizens who are already

in the country.  If it does, Petitioner's detention is mandatory.[76]  If it doesn't, Section 1226

applies and may entitle Petitioner to a bond hearing.[77]

**1.      Section 1225(b)(2)'s plain language doesn't encompass noncitizens who are already in the United States**

The Court's analysis begins with the language of Section 1225(b)(2)(A) itself.[78]  That

subsection provides, in relevant part:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration   officer determines   that   an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings].[79]

---

[75] Respondents do not argue that Section 1225(b)(1) applies.  *See generally* Resp'ts' Resp.  Nor would it—the approximately twenty-six years that Petitioner has spent in the United States places him far beyond Section 1225(b)(1)'s reach.  *See* Pet. ¶¶ 1, 14; 8 U.S.C. § 1225(b)(1) (governing, among other things, removal proceedings for noncitizens who entered the United States without being admitted or paroled less than two years prior to being detained).

[76] *See* 8 U.S.C. § 1225(b)(2)(A) (providing that aliens "shall be detained" pending the outcome of their removal proceedings).

[77] *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

As discussed below, *infra* at 18, Section 1226(c) mandates detention of certain noncitizens with specified criminal histories.

[78] *Ojo v. I.N.S.*, 106 F.3d 680, 681 (5th Cir. 1997) ("[The Court's] task of interpreting a statute begins with an examination of its plain language." (citing cases)).

[79] 8 U.S.C. § 1225(b)(2)(A).

In other words, Section 1225(b)(2)(A) mandates detention where an alien is:

1. an "applicant for admission";

2. "seeking admission"; and

3. not clearly and beyond a doubt entitled to be admitted, as determined by an examining immigration officer.[80]

As for the first criterion, the INA broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )."[81]  There is no dispute that Petitioner is present in the United States and wasn't admitted.[82]  The Court finds that he's an applicant for admission.

Nor is there a dispute over the third criterion, which concerns Petitioner's entitlement to admission.[83]

The real point of contention is whether Petitioner and noncitizens like him are "seeking admission."  The INA defines "admission" as the "lawful entry . . . into the United States after inspection and authorization by an immigration officer."[84]  It follows then that for Section 1225(b)(2)(A) to apply, applicants for admission must be seeking "lawful entry . . . into the United States after inspection and authorization by an immigration officer."

---

[80] *See Aguinaga Trujillo v. Noem*, No. 5:25-CV-1266-JKP, 2025 WL 3471572, at *5 (W.D. Tex. Nov. 24, 2025).

[81] 8 U.S.C. § 1225(a)(1).

[82] *See* Resp'ts' Resp. at 4 ("Petitioner cannot plausibly argue that he is not an applicant for admission."); Pet'r's Reply at 3 ("Petitioner has not claimed that he has been 'admitted' to the U.S." (citing Respondents' Resp. at 5–7)).

[83] *See generally* Pet.; Resp'ts' Resp.; Pet'r's Reply.

[84] 8 U.S.C. § 1101(a)(13)(A).

That's not the case here.  The statute's "use of the present progressive . . . denotes an ongoing process."[85]  To say that Petitioner—who has resided in the United States since approximately 1999[86]—was in the process of seeking the lawful entry into the United States when he was detained in November 2025 stretches the statute's reach well past its limit.

The most natural reading of the statute dictates that Section 1225(b)(2) does not apply.[87]

**2.     Reading Section 1225(b)(2) to apply to noncitizens already in the United States would plague the INA with redundancies**

Respondents, for their part, contend that "seeking admission" is not an additional criterion but rather is synonymous with being an applicant for admission.[88]  Their argument traces through the history of the INA, its definitional provisions, and various cases construing what "admission" means for the purposes of the INA.[89]  These sources, they argue, show that Petitioner falls within the scope of Section 1225(b)(2).

The problems with Respondents' arguments are two-fold.  First, reading Section 1225(b)(2)(A) to apply to Petitioner strips the phrase "seeking admission" of any meaning within the statutory framework.  If Section 1225(b)(2)(A) "were intended to apply to all 'applicant[s]

---

[85] *Cf. Al Otro Lado v. Wolf*, 952 F.3d 999, 1011–12 (9th Cir. 2020).

[86] *See* Pet. ¶¶ 1, 14.

[87] *See, e.g.*, *Pineda v. Noem*, No. 5:25-CV-01518-XR, 2025 WL 3471418, at *5 (W.D. Tex. Dec. 2, 2025); *Djalilov v. O'Neill.*, No. CV 25-6986, 2025 WL 3689147, at *2 (E.D. Pa. Dec. 19, 2025) ("The unambiguous plain meaning of an 'applicant for admission' who is 'seeking admission' is a noncitizen at a port of entry seeking to cross into the United States, not one who has already resided in the United States").

[88] *See* Resp'ts' Resp. at 7–8.

[89] *See id.* at 4–8.

for admission,' there would be no need to include the phrase 'seeking admission' in the statute."[90]

Second, interpreting Section 1225(a)(2)(A) to mandate detention of noncitizens like Petitioner renders recent amendments to the INA's detention framework superfluous. Section 1226(c) carves out categories of noncitizens for whom detention is mandatory, including those who—but for their criminal histories—would ordinarily be entitled to a bond hearing under Section 1226(a).[91]

In January 2025, Congress supplemented Section 1226(c) via the Laken Riley Act (LRA).[92] The LRA, among other things, added Section 1226(c)(1)(E) to mandate detention of noncitizens who:

1. like Petitioner, are present in the United States without being admitted; ***and***

2. have been arrested for, been charged with, been convicted of, or admitted to certain crimes.[93]

If, as Respondents argue, noncitizens present in the United States without having been admitted were already subject to mandatory detention under Section 1225(b)(2)(A), then there wouldn't be any reason to consider their criminal histories under Section 1226(c).[94]

---

[90] *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025); *see also Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032, at *7 (W.D.N.Y. Nov. 4, 2025).

[91] *See* 8 U.S.C. § 1226(c); *see also Jennings*, 583 U.S. at 289.

[92] *See* Pub. L. No. 119-1, 139 Stat. 3 (2025).

[93] *See id.*; 8 U.S.C. § 1226(c)(1)(E).

[94] *See Shi v. Lyons*, No. 1:25-CV-274, 2025 WL 3637288, at *6 (S.D. Tex. Dec. 12, 2025) ("Accepting Respondents' position would strip any 'real and substantial effect' from the language that the Laken Riley Act added to Section 1226(c), as the Secretary could rely on Section 1225 to mandatorily detain every alien subject to Section 1226(c)(1)(E).").

Simply put, Respondents' interpretation would plague the INA with redundancies and, resultingly, break a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant."[95]  Under this rule—often called the "canon against superfluity"—if an interpretation of one provision "would render another provision superfluous," courts presume that interpretation is incorrect.[96]

The Court acknowledges that the preference for avoiding superfluous constructions is not absolute.[97]  To that end, Respondents attempt to justify these redundancies as reflecting the drafters' "flawed sense of style" or "belt-and-suspenders" approach.[98]  Indeed, some courts have accepted this argument, finding it "perfectly possible to interpret [Sections 1225(b)(2) and 1226(a)] as merely overlapping."[99]

This Court isn't persuaded.[100]  Congress passed the LRA against the backdrop of DHS's decades-long practice of applying Section 1226 noncitizens who are already in the country.[101]

---

[95] *See Kungys v. United States*, 485 U.S. 759, 778 (1988) (citing cases).

[96] *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010) (citing *Corley v. United States,* 556 U.S. 303, 314 (2009).

[97] *See Matter of GFS Indus., L.L.C.*, 99 F.4th 223, 229 (5th Cir. 2024) (citation modified); *see also Cabanas*, 2025 WL 3171331, at *6.

[98] *See* Resp'ts' Resp. at 9–10 (citing ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012), 176–77).

[99] *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *4 (E.D. Mo. Nov. 10, 2025); *see also Vargas Lopez v. Trump*, No. 8:25-CV-526, 2025 WL 2780351, at *8–10 (D. Neb. Sept. 30, 2025).

[100] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402, 413 (2024) (While "the judgment of the Executive Branch may help inform" the Court's statutory interpretation, it does so only to the extent of its "power to persuade." (citation modified)); *see also Bostock*, 2025 WL 2782499, at *25 ("As the Supreme Court has recently clarified, this Court is not required to give [the government's interpretations of Section 1225 and 1226] any deference." (citing *Loper Bright Enters.*, 603 U.S. at 412–413)).

[101] *See Bostock*, 2025 WL 2782499, at *19; s*ee also supra* notes 1, 14.

"When Congress adopts a new law against the backdrop of a longstanding administrative construction," courts "generally presume[ ] the new provision should be understood to work in harmony with what has come before."[102]  Especially "when an interpretation would render superfluous another part of the same statutory scheme."[103]  The only way to harmonize the LRA with the INA's pre-existing provisions is to conclude that Section 1225(b)(2) doesn't apply to noncitizens already in the country at the time they were detained.[104]

Were this conclusion at odds with the INA's text, the text would control.[105]  But it's not. The plain language of the INA and canons of statutory construction both strongly support the conclusion that Section 1225(b)(2) doesn't apply here.[106]

\*\*\*\*\*

The "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."[107]  As the Supreme Court explained in *Jennings*:

---

[102] *See Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) (citation modified); *contra Mejia Olalde*, 2025 WL 3131942, at \*5.

[103] *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013).

[104] *See Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

[105] *United States v. Smith*, 100 F.4th 1244, 1250 n.6 (10th Cir. 2024) ("[W]e can best understand the breadth of legislation by its text, not by presuming the non-redundancy of later legislation"); *Barton v Burr*, 590 US 222, 239 (2020) ("Redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text.").

[106] *See supra* at 15–17.

[107] *Zadvydas*, 533 U.S. at 693; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.").

> U.S. immigration law authorizes the Government to detain certain
> aliens ***seeking admission*** into the country under §§ 1225(b)(1) and
> (b)(2). It also authorizes the Government to detain certain aliens
> ***already in the country*** pending the outcome of removal proceedings
> under §§ 1226(a) and (c).[108]

The conclusion that Section 1225(b)(2) doesn't apply here squares not only with Supreme

Court guidance, but also with the Seventh Circuit's recent decision in *Castañon-Nava v. U.S.*

*Department of Homeland Security.*[109] There, the court evaluated many of the above

considerations[110] and concluded that the government was "not likely to succeed on the merits" in

arguing that Section 1225(b) applies to noncitizens already present in the United States.[111]

Absent instructions to the contrary from the Fifth Circuit, this Court sees no reason to deviate

from the Seventh Circuit's conclusion.

Petitioner had been in the country for approximately twenty-six years when he was

detained.[112] This fact carries Petitioner's burden of showing that his detention under Section

---

[108] *Jennings*, 583 U.S. at 289 (emphases added).

The Court also notes that even if the above passage is dicta, Fifth Circuit courts "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (quoting *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

[109] No. 25-3050, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025).

[110] *See supra* at 15–20.

[111] *Castañon-Nava*, 2025 WL 3552514, at *9–10. *Castañon-Nava* involved a request to stay a district court order requiring the release of noncitizens to allow the government to pursue an appeal. *See generally id.* Despite the different procedural posture, the Seventh Circuit's analysis of Section 1225(b)(2) applies all the same.

[112] *See* Pet. ¶¶ 1, 14.

1225(b)(2) is unlawful.[113]  Because Respondents' violation of the INA entitles Petitioner to

habeas relief, the Court declines to reach Petitioner's due process claim.[114]

### C.    Petitioner's release is the appropriate remedy

As explained above, Section 1225(b)(2) is not a lawful authority under which to detain

Petitioner.[115]  That, however, is the only detention authority that Respondents have invoked to

justify Petitioner's detention.[116]

The Court will not consider whether Petitioner's detention is lawful under authorities for

which Respondents themselves have not advocated.  Because Respondents failed to identify a

lawful authority under which to detain Petitioner, Petitioner's release is the proper remedy.[117]

### V.    CONCLUSION

For the above reasons, Petitioner Antonio Alvarado Luna's Petition for Writ of Habeas

Corpus (ECF No. 1) is **GRANTED**.  It is **ORDERED** that:

---

[113] *See supra* notes 40–42 and accompanying text.

[114] *See United States v. Mendiola*, 42 F.3d 259, 260 (5th Cir. 1994) ("It goes without saying that we have a 'strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.'" (first citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 154 (1979); then citing *Three Affiliated Tribes v. Wold Eng'g, P.C.*, 467 U.S. 138, 157–58 (1984))).

[115] *See supra* at 15–20.

[116] *See generally* Resp'ts' Resp.

[117] *See, e.g.*, *Pineda*, 2025 WL 3471418, at *6 (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025)).

1. On or before **December 30, 2025**, Respondents shall **RELEASE** Petitioner from custody, under reasonable conditions of supervision.[118]

2. On or before **December 30, 2025**, Respondents shall **FILE** a notice informing the Court of whether Petitioner has been released from custody.

3. There will be no extensions to the **December 30, 2025 deadlines**.

4. If Respondents re-detain Petitioner, Respondents shall abide by the procedures set forth in 8 U.S.C. § 1226 and corresponding regulations.

5. If Respondents re-detain Petitioner, they shall **FILE** a notice confirming as much **within one day** after such re-detention.  If Petitioner is eligible for a bond hearing under 8 U.S.C. §§ 1226(a) and (c), that notice shall **CONFIRM** the date and time on which the bond hearing will take place, not to exceed **ten days after his re-detention**.

6. The District Clerk shall **SERVE** copies of this Order upon Respondents **and** the United States Attorney in El Paso, Texas.[119]

**So ORDERED and SIGNED this 29th day of December 2025.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[118] *See* 8 U.S.C. § 1231(a)(3) (requiring, as relevant here, that the alien "appear before an immigration officer periodically for identification," "give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," and "obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien").

[119] *See* Habeas Rule 4 ("[T]he clerk must serve a copy of the petition and any order on the respondent[s] and on the attorney general or other appropriate officer of the state involved.").